**Carol F. NICKEL, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, et al., Defendants.**

**No. C–94–2716–CAL.**

United States District Court, N.D. California.

April 25, 1997.

Robert W. Mills, Gilmur R. Murray, Derek G. Howard, The Mills Firm, Greenbrae, CA, for Plaintiff.

Matthew L. Larrabee, Robert A. Rosenfeld, Wayne S. Braveman, Kenneth L. Chernof, Heller, Erhman, White & McAuliffe, Andrew H. Schwartz, Bank of America N.T. & S.A., Office of General Counsel, Jeffrey S. Sloan, Sloan & Pratt, San Francisco, CA, for Defendants.

## OPINION, ORDER AND PARTIAL JUDGMENT

LEGGE, District Judge.

This action arises from excessive trustee's fees charged by defendant to over twenty-five hundred trusts for which defendant was the trustee. The trusts were so-called "contractual fee" trusts; that is, trusts which had contracts defining the fees that could be charged by the trustee. The facts of how the excessive fees were charged are not material to this opinion.

The third amended complaint contains forty two causes of action. This court has jurisdiction over the case by virtue of plaintiff's allegations under 18 U.S.C. § 1961, *et seq.* This court has supplemental jurisdiction over the causes of action based upon California state law, which are the ones central to this decision.

### I.

The case proceeded on the third, fourth and fifth claims, the state law causes of action. The case was so bifurcated, because the court believes that those causes of action pose the issues on which most of the remaining allegations depend: that is, whether the remedy already provided by defendant to the trusts, after it discovered the excessive fees, was the appropriate remedy; or whether plaintiff and her class are entitled to additional relief under California law. The remaining causes of action were therefore stayed pending resolution of those central state law issues. The court resolved the third cause of action before trial; in an order dated August 18, 1995, the court held that if the appropriate remedy includes interest, the interest is simple interest at the legal rate under California Probate Code Section

16441(a). This issue is discussed in Section IV below.

The trial then proceeded on the fourth and fifth causes of action. The trial was conducted by the court sitting without a jury, because the court is of the opinion that those causes of action are issues of equity under California trust law and are not legal claims appropriate for a jury trial.

The trial was conducted, and the court heard numerous witnesses and introduced extensive exhibits. Numerous issues of law were also briefed and argued. The case was then submitted for decision. The court has reviewed the record, the testimony of the witnesses, the exhibits admitted into evidence, the cited depositions,[1] the cited written discovery responses, the legal arguments of counsel, and the applicable authorities. This opinion, order and partial judgment constitutes the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

## II.

The foundational facts are not in dispute. The case arises from fees charged by Security Pacific National Bank for its services as the trustee of a large number of trusts. Security Pacific merged into Bank of America in 1992.[2] At the time of the merger, Bank of America learned that Security Pacific had overcharged some trusts which had contractual fee provisions. Bank of America investigated the issue and then decided to refund the fee overcharges to the trusts. However, the bank continued making fee overcharges until late 1993 or early 1994, while its investigation was going on and refunds were being calculated.

The bank ultimately compensated the trusts in the amount of the fee overcharges, plus interest running from the date of each overcharge. The interest rate was the legal rate of seven per cent for the years 1975 through 1981, and 10% thereafter. Interest was paid on all of the refunds on the basis of simple rather than compound interest. The bank made payments totalling 41.8 million dollars to over 2,500 trusts. That amount consisted of approximately 24 million dollars in refunds of fee overcharges, and an additional 17.8 million dollars in interest.

## III.

Plaintiff then filed this class action seeking additional compensation for the trusts. As stated, federal jurisdiction is based upon allegations of R.I.C.O., 18 U.S.C. § 1961, *et seq.* But the core issues are plaintiff's claims under California trust law, over which this court has supplemental jurisdiction. They are the third, fourth, and fifth causes of action, and they claim that the bank did not give the trusts the appropriate remedy for the fee overcharges. They focus on the appropriateness or inappropriateness, under California trust law, of the reimbursement - with-simple-interest remedy that the bank paid. As stated, the court believes that those causes of action are central to the case and are the ones to be resolved first.[3]

Count three seeks compound rather than simple interest. Count four seeks recovery of profits which may have been made by the bank as a result of the fee overcharges; *i.e.* disgorgement of the bank's own profits. And count five seeks the recovery of profits which the trusts would allegedly have earned if the excessive fees had not been taken.

All of these claims are based upon California Probate Code Section 16440(a), which provides as follows:

> (a) If the trustee commits a breach of trust, the trustee is chargeable with any of the following that is appropriate under the circumstances:

> (1) Any loss of depreciation in value of the trust estate resulting from the breach of trust, with interest.

---

1. Including the late-submitted depositions of Messrs Bricker and Wirtz.

2. Because of the merger, the court simply refers to the two banks in their merged state as "the bank."

3. In the order of December 13, 1995, this court indicated that those causes of action controlled all of the remaining claims in the complaint. But there are a few claims which may be independent of those three state causes of action.

(2) Any profit made by the trustee through the breach of trust, with interest. (3) Any profit that would have accrued to the trust estate if the loss of profit is the result of the breach of trust.

Cal.Prob.Code § 16440(a).

## IV.

In the order filed on August 18, 1995 this court ruled on the third cause of action, although some evidence and opinions were presented on that issue during the trial. For completeness, the court repeats its conclusions on the third cause of action from the August 18, 1995 order. Those conclusions were further supported by the evidence and legal authorities presented during the trial.

The third cause of action seeks a declaration that the interest paid on the overcharges should be compound interest, rather than the simple interest which the bank paid. The court construes this claim to be that *if* the appropriate remedy is a refund of the overcharges under California Probate Code Section 16440(a)(1), the interest should be compound; or *if* the appropriate remedy is a disgorgement of profits under subsection (a)(2), then that interest should also be compound.

■ However, that claim is contrary to Probate Code Section 16441(a). That section provides that if the trustee is liable for interest under Section 16440, then the interest is the "interest that accrues at the legal rate on judgments in effect during the period when the interest accrued." The legal rate of interest on judgments is set by the California Code of Civil Procedure Section 685.010(a). That is simple interest. *Big Bear Properties, Inc. v. E.M. Gherman,* 95 Cal.App.3d 908, 157 Cal.Rptr. 443, 446 (1979).

In support of her argument for compound interest, plaintiff cites earlier California cases, which had charged trustees with compound interest. She also cites the *Restatement of Trusts* (1935). However, those authorities are trumped by the statute. Section 16441(a) was enacted in 1986 and is retroactive. It replaced the then existing case law on compound interest, and it differs from the *Restatement's* treatment of interest. *See* 11 Witkin, *Summary of California Law, Trusts* § 151, at 1007 (9th

Ed.1990). According to the 1986 and 1990 comments of the California Law Revision Commission, Section 16441 was passed expressly to eliminate the availability of compound interest, and is not limited to trust breaches of only a short duration. *See* 18 Cal.Law Revision Commission Reports, 560–61 (1986); and 20 Cal.Law Revision Commission Reports, 1939 (1990).

Defendant's motion for judgment on the third cause of action was therefore granted. If the form of reimbursement which the bank selected, Section 16440(a)(1), is the correct remedy, or if plaintiff is entitled to the remedy provided by Section 16440(a)(2), the interest is simple interest at the legal rate.

The trial then proceeded on the fourth and fifth causes of action, under subsections 16440(a)(2) and 16440(a)(3). The issue of the *amount* of plaintiff's damages, if plaintiff's claims are correct, was reserved for a later trial. And the issues defined in California Probate Code Section 16440(b) were also reserved until later.

## V.

Plaintiff's legal contentions can be summarized as follows: the bank's taking of the fee overcharges, and its use of those fees for its own purposes, were breaches of trust and of the trustee's duty of loyalty. The beneficiaries are entitled to their choice of remedies, including recovery of the bank's profits or the trusts' lost profits under subsection 16440(a)(2) and (a)(3), and they can select the most favorable measure. Plaintiff argues that the bank instead chose the remedy most favorable to itself; that is, simple interest at the legal rate. Plaintiff contends that because any difficulties in awarding damages under (a)(2) or (a)(3) result from the bank's actions, the burden of proof must be on the bank and all doubts must be resolved in favor of the trusts.

The bank contends that the remedy which it provided to the trusts was the remedy defined by Section 16440(a)(1), and is the only remedy that is legally appropriate under the facts of this case, as established by California law and California trust practice. The bank also asserts that the other remedies

defined in subsections (a)(2) and (a)(3) are not appropriate for numerous reasons.

The bulk of the evidence in the trial focused on the issues of whether the (a)(2) or (a)(3) remedies are appropriate remedies under the facts of this case.

## VI.

■ The court first addresses the bank's contention that the remedy which it provided under (a)(1) is the *only* legal remedy under California law. If the bank is correct in that contention, there is no necessity for proceeding to a discussion of (a)(2) and (a)(3) and the evidence which the court has heard on those issues. If the bank is not correct, then the court must consider (a)(2) and (a)(3) and whether those are the appropriate remedies instead of (a)(1).

The bank correctly points out that the wrong committed here was the trustee's taking of excess compensation. The bank then cites a number of California cases for the proposition that where the wrong is the taking of excessive fees by the trustee, the only appropriate remedy is the return of the excess compensation with interest. *Estate of Willardson*, 101 Cal.App.2d 777, 226 P.2d 369 (1951); *Estate of Guglielmi*, 138 Cal.App. 80, 31 P.2d 1078 (1934); *Estate of Carter*, 132 Cal. 113, 64 P. 123, 484 (1901); *Estate of Gilfillan*, 79 Cal.App.3d 429, 144 Cal.Rptr. 862 (1978).

The bank is correct that in those California cases, involving the taking of improper compensation, the remedy directed by the California courts was the return of the excess compensation and interest. However, those cases did not discuss whether other remedies might also be appropriate, and did not hold that a refund with interest was the *only* available remedy. While those cases are certainly relevant authority for the bank's position that it selected the correct remedy, those cases do not stand for the proposition that, as a matter of law, a refund plus interest is the *only* remedy.

The cited cases are not just legal history. *Willardson* was cited with approval as late as 1978 in *Gilfillan*, 79 Cal.App.3d at 436, 144 Cal.Rptr. 862. And in the legislative history of Probate Code Section 9602 in 1990, *Estate of Guglielmi* was cited with approval; 20 Cal.Law Rev.Comm. Comment, 1508 (1989). And no act of the California legislature has made any amendment to the Probate Code, after all of those cases were decided, declaring that a refund with interest is *not* an appropriate remedy.

The bank has also cited numerous probate rules of various Superior Courts throughout the State of California. Some of those rules support the bank's position that in cases of fee overcharges, the appropriate remedy is a refund of the fees with interest. Those rules are indicative of California trust practice, at least in those counties. However, in the hierarchy of applicable California law they are subordinate to the acts of the legislature and to California appellate decisions. They do not necessarily establish, as a matter of law, that a refund plus interest is the only available remedy.

The bank's position was also supported by one of its expert witnesses. His opinion was that a return of the overcharges, with interest, is the correct remedy under California law. He pointed out that the Probate Code provisions regarding trustees are parallel to those dealing with guardians, conservators, and personal representatives such as executors and administrators. And he expressed the opinion that from his experience and research the (a)(2) and (a)(3) remedies have never been applied in fee overcharge cases. This is testimony, albeit significant, of the practices in trust law in this state. However, it is not legal authority that such remedies could never be applied under California law.

The court therefore concludes that defendant has not established, as a matter of law, that the *only* available remedy under California law is the return of the overcharges with interest.

## VII.

This court must then proceed to a decision on what is the appropriate remedy under Probate Code Section 16440.

## A.

Before doing so however, a few procedural issues should be discussed.

■ Plaintiff contends that when a beneficiary sues a trustee for a breach of trust, the beneficiary is entitled to her choice of the available remedies. See *Restatement (Second) of Trusts,* comments to section 205 (1959); III William F. Fratcher, *Scott on Trusts,* § 205, at, 237–43 (4th Ed.1988). Plaintiff appears to advocate this right of choice *as a rule of law.* But the experts on both sides ultimately agreed that the decision as to what remedy is appropriate under Section 16440 is one for this court, and is not simply a matter of a plaintiff's choice. While plaintiff can initially assert her position that she prefers a remedy other than the one that the trustee provided, in California that does little more than place the issue in the hands of the court. Section 16440(a) expressly states that the choice of remedies must be the one "that is appropriate under the circumstances." This is a judicial determination, and not simply a matter of a plaintiff's option. A remedy sought by a plaintiff might be inappropriate because it is not the right remedy defined by law or equity. Or it may be inappropriate if it is not a remedy which can or should be applied in a given setting, as determined by the evidence. Probate Code section 16421 also states that the remedies of a beneficiary against a trustee are "exclusively in equity."

The parties also argue over the procedural question of who has the burden of proof. But that issue was of little consequence in the context of this trial. Both sides put on extensive testimony and produced extensive exhibits. There is no failure of proof on either side. The findings of fact and conclusions which the court reaches in this opinion and order are found by a preponderance of the evidence, and are in part based upon California law, regardless of which side is assigned the burden of proof.

■ Both sides now also agree that the decision on the appropriate remedy is an objective decision. That is, it does not depend upon the intent, the good faith, or the bad faith of the bank. Indeed, any inquiry into the trustee's reasonableness and good faith is a consideration separate from appropriateness, and is defined in subsection (b) of Section 16440.

In this context, it is relevant to comment on plaintiff's numerous demands, both before and during trial, for the production of documents as to which the bank asserted the attorney-client privilege. Plaintiff contends that the beneficiaries-plaintiffs are the clients, and hence that the attorney-client privilege is not applicable when they request information about communications between the bank's attorneys and the bank. The issue of when the attorney-client privilege does or does not protect communications between a trustee and its attorney on the subject of the trust is complex under California law. *See e.g. Wells Fargo Bank v. Superior Court,* 57 Cal.Rptr.2d 335 (1996), *cert. granted,* 60 Cal.Rptr.2d 606, 930 P.2d 399 (1997), and *U.S. v. Evans,* 796 F.2d 264, 265–66 (9th Cir.1986). That is, is the attorney giving advice to the trustee for its own benefit, or for the benefit of the beneficiaries? This court has not resolved that privilege question here, and does not believe that it is necessary to do so. As stated, the inquiry on appropriateness is an objective one, so the subjective intent of the bank is not relevant at this stage of the inquiry. There was very substantial evidence during the trial on what was done, the alternatives that were considered, and the information (except for legal advice) that the bank had before it in making the decision to use the (a)(1) remedy. Even if this court were to assume that the documents which plaintiff seeks would show some lack of good faith on the part of the bank, that evidence would not be relevant to the objective inquiry of the appropriate remedy. And such evidence is not necessary in view of the substantial objective evidence presented on what was done and why.

B.

■ Even if the (a)(1) remedy is not required as a matter of law, the authorities discussed above in section VI. are strong authority for the proposition that a refund with interest is the appropriate remedy. It is difficult to ignore such substantial bodies of law and practice which have approved that remedy. On the other side of the legal ledger, plaintiff is unable to cite any California authority holding that (a)(2), or (a)(3) is the appropriate remedy in a case of an overcharge of fees.

Instead, plaintiff attempts to expand the inquiry in order to apply more general trust principles. Plaintiff's first attempt in that regard is somewhat semantic. That is, plaintiff calls the wrong done here a "breach of trust" and a "breach of the duty of loyalty." She does so in order to apply remedies which have been awarded in other settings under that terminology.

Indeed, what the bank did here was a breach of trust, and it is arguable that any breach of a trust which results in a gain to the trustee is a breach of the duty of loyalty. But those arguments place words over substance. What is the *act* that breached the trust here? It was not secretly embezzling the trusts' money, or investing the trusts' money in a related business, or making investments not in the trusts' best interests. Here the wrongful act was taking more fees than the trust agreements allowed.

The same response applies to plaintiff's argument that the bank "commingled" the trusts' funds by accepting the higher fees and adding them to the bank's revenues. It places words over substance. There was no commingling of the trusts' own investments or income. And whenever a trustee receives a fee and puts it in its general revenues there is always "commingling" to that extent. The *wrong* was still the taking of excess fees.

At least under California law, fee issues between the trustee and the trust are governed by certain different, even if not wholly exclusionary, principles. The California legislature recognized in Probate Code Section 16004(c) that fee issues, while certainly posing a conflict between the trustee and the beneficiary, are not breaches of fiduciary duties:

> (c) ... This subdivision does not apply to the provisions of an agreement between a trustee and a beneficiary relating to the hiring or compensation of the trustee.

Cal.Prob.Code § 16004(c).

The California cases cited above have developed a body of law for dealing with fee overcharges. And the local probate courts, as reflected in their local rules, have in practice applied specific remedies in fee overcharge cases.

Plaintiff also attempts to apply broader common law authorities, from California common law and from cases nationally. However, this court must apply California law to this dispute. And where the California legislature has spoken on an issue, that takes precedent over even the common law of this state.

Similarly, plaintiff attempts to apply alleged principles of more "modern" law, as expressed in the *Restatement (Third) of Trusts*. But the authorities are clear that the California statutory pattern at issue in this case was based upon the *Restatement (Second) of Trusts* and not upon the *Restatement (Third)*. Specifically, Section 16440 was expressly based by the legislature on *Restatement (Second)*. 18 Cal.Law Rev. Comm. Reports. 556–559 (1986). And where the legislature has spoken or where California case law is specific, that must control over the *Restatement (Third)*.

The legislature last amended the Probate Code in 1995, in some ways following the so-called "modern" concept of *Restatement (Third)*. But the California legislature did *not* include any of the remedial modifications recommended by the *Restatement (Third)*. The 1995 revisions did include adoption of the Uniform Prudent Investor Act ("UPIA"), which was in turn based in part on *Restatement (Third)*. But the drafters' notes of the UPIA expressly state that it does *not* change the law of remedies in trust matters:

> This Act does not undertake to address issues of remedy law or the computation of damages in trust matters. Remedies are the subject of a reasonably distinct body of doctrine. See generally Restatement (Second) of Trusts....

*Official Text of UPIA*, 25 Cal.Law Rev. Comm. Reports 543 app. at 593 (1994). By adopting the UPIA and the notes contained therein, the California drafters implicitly recognized that the UPIA does not change the California law of remedies in trust matters.

Whatever the *Restatement (Third)* and the UPIA may portend for the future, present California law on the issue in this case is not based upon them. Their so-called "modern" concepts, "prudent investor" concepts, or "total return" concepts are not now a part of the California statutory pattern; nor have they been adopted by California cases.

Many of plaintiff's arguments are founded on the financial results. That is, plaintiff views the remedy of a refund-plus-interest as being inadequate compared with what might have been earned from other measures of investment, particularly in the recent years of substantial growth in common stock values. Similarly, plaintiff argues that the remedy of refund-plus-interest is not adequate punishment to deter trustees from future wrongful conduct. But the decision here must be driven first by the law and only second by the financial results. That is, there is no California legal principle which holds that the best financial remedy is the one that *has* to be applied. This court has no power to refuse to apply a California statute, such as the one on simple versus compound interest, or to refuse to apply applicable California cases, just because the financial results are not as good as plaintiff or the court might like to see.

The court is therefore left with the substantial body of California law that the (a)(1) remedy is the one that has been applied to such cases as this. And plaintiff can cite no California authority to the contrary. However, this is still not the end of the analysis. The court must still determine whether the (a)(2) or (a)(3); remedy might nevertheless be the appropriate remedy under the *facts* of this case. This of course requires an examination of the evidence which was presented on these issues.

### C.

The court first notes a few points about the (a)(2) and (a)(3) remedies generally:

Plaintiff produced evidence that the bank had made other refunds to some trusts in the past, and that in doing so it used remedies which approached (a)(2) or (a)(3), or it used an interest rate other than simple interest. Such evidence is certainly relevant on whether (a)(2) and (a)(3) are appropriate remedies. However, the court discounts the weight of that evidence. Some refunds were individualized situations, which were apparently resolved by specifically negotiated compromises. In other refunds, pragmatism and practicality obviously triumphed over principle. And in others, the (a)(1) remedy might in fact have produced a higher return to the trust. So while the fact that the bank in the past provided remedies in some situations that were other than (a)(1) is probative, it is not controlling. The analysis must still be what is "appropriate" under the facts of *this* case.

Similarly, there was evidence that before deciding on the (a)(1) remedy here, the bank did consider other possible remedies. But the fact of their consideration and rejection by the bank is not evidence in plaintiff's favor as to what is objectively "appropriate."

In considering what is appropriate, Section 16440 requires that both the (a)(2) and the (a)(3) remedies have a causal connection. That is, under (a)(2) the recovery of the bank's profit must be a profit "made by the trustee through the breach of trust." And the (a)(3) remedy provides for the recovery of the trust's lost profit only "if the loss of profit is the result of the breach of trust." These causation requirements compel analyses that are something more than just the fact that the bank received excess fees.

### D.

The (a)(2) remedy is "Any profit made by the trustee through the breach of trust, with interest."

The evidence demonstrated that other than the amount of the fees themselves, no profit from the fees was traceable within the bank. The excess fees were not separately invested, placed in a separate account, or separately used by the bank. They simply became part of the bank's general operating revenues and operating accounts. They were used in the ordinary course of the bank's business in the payment of its expenses, the making of its loans, and its distributions to shareholders.

Traceability is a relevant consideration to the appropriateness of the (a)(2) remedy. Even plaintiff's expert testified that although traceability is not legally required in order to award an (a)(2) remedy, it is a relevant consideration. In this case, the use of the excess fees cannot be traced. And this is not just a matter of which party had the burden of proof. The evidence was clear that *no* such tracing was possible.

Plaintiff argues that in absence of tracing, the court could instead use a market rate value of money, primarily the federal funds overnight rate or the prime rate. This of course would be an assumed measure of profit. But it is not possible to say whether, and certainly not how long, the excess fees might have been invested in those uses. In this case, such substitutes or assumed rates are not sufficient to establish the causation required for appropriateness.

Plaintiff also argues that the court could make a determination of the bank's profit based upon a calculation of the bank's return on its equity. However, such a measure of damages is highly speculative. In *Wells Fargo Bank, N.A. v. United States,* 88 F.3d 1012 (Fed.Cir.1996), a case involving a bank's capital in a different context, the Federal Circuit rejected a similar measure of lost-profits damages as being too speculative. *Id.* at 1022–1024. And defendant's economic expert demonstrated why, in numerous ways that need not be repeated here, a return-on-equity type of calculation is economically and statistically unsound. It does not meet the causation requirement of (a)(2).

The court finds and concludes from the evidence that a remedy based upon the bank's profits is too speculative to be appropriate. The fee overcharges here were a very minute, almost an unmeasured percentage, factor in the bank's income. They were not statistically significant enough to justify assumptions being applied to them about market rates, return on equity and the like. The fee overcharges simply became a part, and as stated a minute part, of the bank's general revenues. There was nothing legally improper with the commingling of the fees with the bank's other income, since all fees received by a trustee inherently become a commingled part of its general revenues. Any attempt to apply proxy rates, ratios or formulas to those sums would be unrealistic and inherently speculative. They are insufficient to meet the causation requirement of (a)(2).

The court therefore finds and concludes that (a)(2) is not the appropriate remedy for the overcharged fees in this case.

### E.

The (a)(3) remedy is "Any profit that would have accrued to the trust estate if the loss of profit is the result of the breach of the trust."

The court finds the same difficulties here as it does with the (a)(2) remedy; that is, it is too speculative to meet the causation requirement of the statute to be appropriate. With over twenty-five hundred trusts, existing over substantial periods of years, and with numerous variations among the trusts, it cannot be determined what profits the trusts would have made if they not been overcharged. The large number of trusts alone makes such an individualized analysis impractical. And even if enough time and resources were devoted, the court concludes that the profits of the trusts could not be determined. This inability is not just a matter of the burden of proof in this case; it just cannot realistically be done.

Plaintiff's solution to that problem is again to have the court apply ratios, averages and indices to the twenty five hundred-plus trusts. Plaintiff would first use the bank trust department's standard methodologies for attributing certain types of investments to the trusts, and then measure the results of those investments by the bank's consolidated investment performance, the Standard & Poors Five Hundred Index, or other market indices.

The trouble with this methodology is that it does not reflect reality. The trusts had differing investment objectives, and those objectives sometimes changed during the lives of the trusts. The income beneficiaries and principal beneficiaries also had, at times, differing interests within individual trusts. There were different types of trusts. The liquidity needs of each differed. Taxes were an issue in some trusts, but not in others. Most of the money going to the trusts, particularly to the income beneficiaries, was promptly paid out by the trusts. Most of the trusts have been terminated. And some trusts held quantities of cash that were not invested. The application of averages, ratios, combined rates of return, and the like simply do not fit the facts of these widely disparate trusts. Nor do those applications address

the facts that all of the trusts, under plaintiff's methodology, would receive the benefit of a high rate of return, such as the Standard & Poors Five Hundred Index, when in fact many trusts did not bear the investment risks of that type of growth investment.

The causation requirement of (a)(3) cannot be so met. The court therefore finds and concludes that the (a)(3) remedy is not the appropriate remedy here.

### F.

In summary, the court finds and concludes that the appropriate remedy in this case is the (a)(1) remedy. That is the remedy which has been applied by several California cases. It is the remedy most consistent with the California Probate Code. It is the remedy applied by many local probate courts. And for the reasons discussed above, it is the most appropriate remedy under the evidence in this case.

That remedy provides a reasonable, even if not generous in today's market environment, compensation to the trusts. It is a remedy which is easily applicable to all of the varieties of trusts. The (a)(2) and (a)(3) remedies are not appropriate because of the absence of causation required by those two subsections. The use of other indices are too speculative and are based upon assumptions about the trusts which cannot be substantiated by the facts.

### VIII.

Before concluding with these decisions and scheduling the next phase of the case, the court will discuss some conclusions about other arguments made by the parties which were put in issue at the trial.

### A.

Plaintiff argues that the bank also breached its duties to the trusts by not stopping the overcharges *as soon as* the bank discovered that they had occurred. It was some period of time after initially discovering the fact of the overcharges before the bank stopped them and paid the (a)(1) remedy.

■ However, plaintiff's argument again does not reflect the realities of the situation. The discovery of the *fact* of there being overcharges did not answer the questions of which of the over twenty-five hundred trusts and sixty-six hundred beneficiaries were overcharged, and on what basis they should properly have been and be charged fees. These questions required an analysis of each trust, and of what the correct fee charges should have been. That could not be done instantaneously. It took considerable time to investigate each trust, to decide the correct fee rate, to calculate the overcharge, and to decide upon and pay the appropriate remedy. The investigations, calculations, and procedures for the payment of the refunds was an expensive process, which involved bank personnel and outside accountants. The cost of the undertaking was approximately twelve million dollars, in addition to the amounts of the refunds and interest themselves.

The court finds that the bank could not have, through any reasonable diligence, stopped the overcharges any sooner after discovering the fact that they had occurred. And the overcharges that were received by the bank during the period of the investigation were themselves reimbursed with interest—what the court has now determined to be the appropriate remedy.

### B.

■ Reference has been made to subparagraph (b) of Section 16441. This subsection provides for the trustee to pay interest greater than just the legal rate on judgments, if the trustee "actually received" a greater amount. However, the bank did not here actually receive a higher amount *of interest.* The fees were not placed in an interest-bearing account for any identifiable period of time. And the court is of the opinion that subsection (b) applies only when money, in the form *of interest,* can be traced into the hands of the trustee.

### C.

California Probate Code remedies also include Section 16442, which says that the provisions in the code for the liability of a trustee for breach of trust "do not prevent resort to any other remedy available under the statutory or common law." Cal.Prob.Code § 16442. On its face, that section could be read as being an addition to the remedies

defined by the legislature in Section 16440. However, it is highly unlikely that the legislature would have defined specific remedies in Section 16440, only to have them trumped by other common law remedies or by such a general section as 16442.

■ The court believes that the correct reconciliation of the two sections is that suggested by defendant's expert. That is, Section 16442 applies to other *types of remedies,* such as the removal of the trustee and the remedies listed in Section 16420, and does not apply a different *measure of damages.* The court believes that interpretation is also consistent with Section 15002, which says that: "Except to the extent that the common law rules governing trusts are modified by statute, the common law as to trusts is the law of this state." Cal.Prob.Code § 15002.

It therefore appears that the statutory pattern is for the California legislature to pass a few specific statutes for specific situations, and then to leave to the common law (as it then existed or as it will develop in the future) the matters not specifically covered by the statutes. And as stated, the legislature has occupied the field for the purposes of the issues in this case, by passing Section 16440(a) defining the appropriate remedies and Section 16441(a) providing for simple interest at the rate provided for judgments.

### IX.

For the reasons discussed above, IT IS ORDERED that judgment be entered in favor of defendants and against plaintiff on the third, fourth, and fifth causes of action.

There will be a status conference on May 30, 1997 at 11:00 a.m. to discuss the further proceedings in this case. One of the issues at the conference will be what other causes of action of the third amended complaint are also resolved by the above decisions on the third, fourth and fifth causes of action.

IT IS SO ORDERED.