**Carol F. NICKEL, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

**v.**

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION; BankAmerica Corporation; Bruce Norman; Andrew Schwartz; James Bessolo; Michael Halloran, Defendants–Appellees.**

No. 01–15452.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 2002.

Filed May 17, 2002.

As Amended on Denial of Rehearing June 19, 2002.

Jerome B. Falk, Jr., Therese M. Stewart, Noah B. Novogrodsky, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, San Francisco, CA; Gilmur R. Murray, Derek

G. Howard, Marray & Howard, L.L.P., Oakland, CA; Robert Mills, The Mills Firm, San Rafael, CA, for the plaintiff-appellant.

Janice M. Fetsch, Associate General Counsel, Bank of America, Robert A. Rosenfeld, Matthew L Larrabee, David B. Goodwin, Kenneth L. Chernoff, Heller Ehrman White & McAuliffe, LLP, San Francisco, CA, for the defendants-appellees.

Before: REINHARDT, NOONAN and FERNANDEZ, Circuit Judges.

## OPINION

NOONAN, Circuit Judge.

This appeal presents a single issue: the appropriate remedy under California law for breach of trust by a professional trustee, a profit-making bank. Holding that the appropriate remedy is a proportionate share of the profits the bank made with the misappropriated trust funds, we reverse the judgment of the district court.

## FACTS

Security Pacific National Bank (SP) was the trustee for 2,500 or more trusts (the parties are not more precise), for which its compensation was set by contract and could only be increased by consent or by order of the probate court. Nine times between 1975 and 1990 SP raised its fees without consent or court order. On April 22, 1992, the Bank of America (the B of A) acquired SP by merger and discovered its illegal practice. The B of A, however, was unable to correct that practice until 1994. It then refunded $24 million of overcharges to the trusts together with $17.8 million interest for the period of the overcharges. The B of A calculated the interest at the legal rate of 7% for 1975–1981 and 10% for 1981–1994. The B of A did not compound the interest.

## PROCEEDINGS

On August 5, 1994, Carol F. Nickel brought a class action in the San Francisco superior court against the B of A alleging state causes of action. The B of A removed the case to the federal district court. Nickel then amended her complaint to allege not only the state causes of action but violations of RICO, 18 U.S.C. § 1962.

The district court noted that the B of A did not dispute that overcharges had been made or their amount. The question before the court was whether, under California law, the bank had provided the proper remedy. That question the court found to be equitable. Addressing the third cause of action, which claimed the interest should have been compounded, the court, on August 18, 1995, granted summary judgment to the bank on this issue. Based on reports of the California Law Revision Commission in 1986 and 1990, and on 11 Witkin *Summary of California Law,* "Trusts," § 151 (9th ed.1990), the court held that Cal. Probate Code 16441 meant simple interest. The case proceeded to trial before the court on the plaintiff's claims for disgorgement and restitution of lost benefits. Both sides offered witnesses and extensive exhibits.

On April 25, 1997, the district court gave its opinion. *See Nickel v. Bank of America,* 991 F.Supp. 1175 (1997). It observed that all of the plaintiffs' claims were based on the California Probate Code, which, in relevant part, reads as follows:

(a) if the trustee commits a breach of trust, the trustee is chargeable with any of the following that is appropriate under the circumstances:

(1) Any loss or depreciation in value of the trust estate resulting from the breach of trust, with interest.

(2) Any profit made by the trustee through the breach of trust, with interest.

(3) Any profit that would have accrued to the trust estate if the loss of profit is the result of the breach of trust.

Cal. Prob.Code § 16440(a).

The court held that determination of the profits "that would have accrued" to the 2,500 trusts was a matter of speculation, too difficult to prove because of the small size of many of the trusts, the variety of their terms and investment policies, and their different dates of termination. *See Nickel,* 991 F.Supp. at 1183–84. The court held that any profit made by the B of A was also speculative, incapable of proof because the over-charges could not be traced into any particular loans or investments made by the bank. *Id.* at 1182–83. Therefore both (a)(2) and (a)(3) were held not to be appropriate remedies, "because," as the court put it succinctly, "of the absence of causation required by these two subsections." *Id.* at 1184. The court concluded that (a)(1) was therefore the appropriate remedy—return of the overcharges with interest. As the court had already ruled, "interest" meant "simple interest."

The parties then entered a stipulation and agreement governing all claims, except that Nickel reserved the right to appeal all of the court's rulings on damages. On December 22, 2000, the court approved the stipulation and settlement. This appeal by Nickel followed.[1]

## ANALYSIS

■ *Simple or Compound Interest.* Prior to 1986, long-standing California law permitted a court to award compound interest in some cases of breach of fiduciary duty. *E.g., In re Lux's Estate,* 100 Cal. 609, 616, 35 P. 345 (1893). Civil Code § 2262 gave the rule a statutory basis. California was in accord with the American Law Institute, *Restatement (Second) of Torts* § 207(d) (1959). The California Law Revision Commission in 1986 proposed to reject this rule and replace it "with a uniform rule," setting the rate of interest at 10%, "the same as the rate applicable in money judgments." 18 California Law Revision Commission Reports (CLRCR) 560 (1986). Accordingly, in 1987, Civil Code § 2262 was repealed, and § 16441 of the Probate Code was amended to read:

§ 16441. (a) If the trustee is liable for interest pursuant to section 16440, the trustee is liable for the following amounts.

(1) The amount of interest that accrues at the legal rate on judgments in effect during the period when the judgment accrued.

(2) The amount of interest actually received.

Under Cal. Civ.Proc.Code 685.010(a), the legal rate on judgments is calculated with simple interest. *See Big Bear Properties, Inc. v. E.M. Gherman,* 95 Cal.App.3d 908, 913, 157 Cal.Rptr. 443 (1979); *see also Hess v. Ford Motor Co.,* 27 Cal.4th 516, 530–33, 117 Cal.Rptr.2d 220, 41 P.3d 46 (2002) (interpreting similar language). The language of the statute indicating that interest under § 16441(a) is simple interest is buttressed by the legislative history. In 1990, the Probate Code was re-enacted in its entirety, at which time the entire Law Revision Commission explicitly stated that interest under § 16441(a) was simple and not compounded. *See* 20 CLRCR 1939 (1990). Accordingly, the district

---

1. Nickel filed a motion to certify the issues in this case to the Supreme Court of California. We deny that motion because many of the issues are fact-specific and because we can resolve all of them by relying on existing California law.

court was correct in holding that the interest awarded must be simple interest.

■■■■ *Disgorgement.* The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me. *See* American Law Institute, *Restatement of Restitution* § 1 (1937). The district court obscured this rule in two ways. First, the court relied on Probate Code § 16004, which reads:

> (c) A transaction between the beneficiary which occurs during the existence of the trust or while the trustee's influence with the beneficiary remains and by which the trustee obtains an advantage from the beneficiary is presumed to be a violation of the trustee's fiduciary duties. This presumption is a presumption affecting the burden of proof. This subdivision does not apply to the provisions of an agreement between a trustee and a beneficiary relating to the hiring or compensation of the trustee.

The district court declared that this statute meant that "fee issues are not breaches of fiduciary duties" *Nickel,* 991 F.Supp. at 1181. However, SP and the B of A's acts are not reducible to "fee issues." In the expert testimony of John Langbein, Chancellor Kent professor of law at Yale Law School and chair of the probate and trust division of the Uniform Law Conference, the overcharges by the two banks were "an open-and-shut breach of the trustee's duty of loyalty," particularly surprising in the case of a corporate trustee, from which a higher standard of professional care is expected. The statute relied on by the district court dealt with the burden of proof on a compensation issue. The statute did not alter the fiduciary's responsibility for restitution.

■■■ The district court made a second mistake of law in reading a requirement of traceability into a tortfeasor's obligation to make whole its victims. Traceability and causation are not the same. If the banks had taken the overcharges and thrown the money out the window, there would be no causation, and, if the banks could prove they had done this, the plaintiff would lose. But in the regular course of business, the banks put the overcharges to work. The overcharges caused an addition to profit.

The exact course of the contribution made by the over-charges has not been shown. But the problem of showing where the money went is the tortfeasor's problem. Probate Code § 16440(a) "is drawn from Section 205 of the Restatement (Second) of Trusts." 20 California Law Revision Commission Reports 1939 (1990). The language of § 16440(a) is indeed virtually identical with that of Section 205, except that the statute makes the remedy dependent on what is "appropriate under the circumstances." Under neither the statute nor the Restatement is a requirement of traceability stated or implied. There being nothing in the statute to suggest a requirement of traceability, a long line of California cases holds that it is not required. *See, e.g., Title Ins. and Trust Co. v. Ingersoll,* 158 Cal. 474, 484, 111 P. 360 (1910) ("The fact that the money was in part commingled ... so as to destroy its specific identity does not necessarily prevent enforcement. It prevents the court from tracing it and declaring any specific parcel of property to be trust property, but the trust may still be enforced by a personal judgment.").

Money is fungible. Once in the bank's accounts as belonging to the bank, the specific sums taken from the trusts could never be identified again. A requirement of traceability nullifies the bank tortfeasor's obligation to cough up the profits it has made by the use of what it has wrongfully taken.

The district court suggested that proof of the trusts' share of the bank profits was "speculative." That suggestion is simply a sophisticated restatement of the require-

ment of traceability. There is no speculation as to either the bank's annual profit or as to the share of the bank's capital represented by the overcharges. Once traceability is seen to be a chimera, the calculation of what is owed the trusts is straightforward.

SP and the B of A were profitable institutions in all years at issue. The money misappropriated from the trusts added directly to what the banks had to loan or to invest or, if not directly loaned or invested, was used to meet expenses, freeing an equal amount for loan or investment. In all, it is admitted that $24 million of overcharges were used in one of these ways. The first option under § 16440(a), restitution with simple interest, is not appropriate under the circumstances because apparently (subject to final determination on remand) it does not give the trusts an amount close to equaling a share in the profits made with their money. The third option is inappropriate for the reasons given by the district court. The appropriate remedy is to allot to these unwitting and unwilling contributors a proportionate share of the banks' profits during the years of misappropriation.

By the parties' stipulation of October 22, 2000, this court's decision will not be appealed to another court. Also according to the stipulation if, applying the decision of this court, Nickel is entitled to an additional recovery of more than $12.5 million, then the B of A will make a payment of $40 million. This provision appears to make it unnecessary for us to set out in detail the calculation of trusts' share of the profits.

The judgment of the district court is REVERSED, and the case is REMANDED for determination of the profits of the banks to be distributed in accordance with this opinion.

FERNANDEZ, Circuit Judge,
Dissenting.

I dissent because I believe that the district court opinion was, essentially, correct. I adopt it [1] as my own, with one important caveat. That is, as I read the opinion, the court determined that in most instances the appropriate remedy for taking an excess fee should be repayment of that fee with simple interest.[2] *Nickel I*, 991 F.Supp. at 1179–82. However, there may be times when it is proper to use a different measure.[3]

Because of the lack of tracing, the small amount of the fees in the whole picture, and the excessively speculative and inappropriate nature of the alternate solutions propounded by Nickel, this is not one of those times. Thus, the wisdom of the usual approach is apparent, and the proper remedy remains reimbursement plus simple interest. Even if the district court's opinion could be read as stating that the possibility of other solutions is always excluded, I still read it in this more limited way.

Thus, I respectfully dissent.

---

1. *Nickel v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 991 F.Supp. 1175 (N.D.Cal.1997) (*Nickel I*).

2. I do not much like the simple interest approach, but it is, as the majority points out, the one chosen by the California legislature.

3. For example, if the trustee has greatly benefitted itself by pocketing half of a sizeable trust fund as a "fee," the court could surely develop an appropriate equitable special remedy. Here the excess percentage taken was small (an expert opined that the median was .1% of trust value) and amounted to "a very minuscule, almost an unmeasured percentage, factor in the bank's income." *Nickel I*, 991 F.Supp. at 1183.