NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 29 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LOVADA WORKMAN,

        Plaintiff-Appellant,

  v.

DEARBORN NATIONAL LIFE
INSURANCE COMPANY,

        Defendant-Appellee.

No.   20-55182

D.C. No.
2:17-cv-04515-ODW-SS

MEMORANDUM[*]

LOVADA WORKMAN,

        Plaintiff-Appellee,

  v.

DEARBORN NATIONAL LIFE
INSURANCE COMPANY,

        Defendant-Appellant.

No.   20-55268

D.C. No.
2:17-cv-04515-ODW-SS

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted December 10, 2021
Pasadena, California

---

    [*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: BERZON and BEA, Circuit Judges, and BENNETT,[**] District Judge.

Appellant Lovada Workman ("Workman") was the sole beneficiary of a life insurance plan held by her former husband, John Borum, and administered by Appellee Dearborn National Life Insurance Co. ("Dearborn"). Borum died of lung cancer on June 30, 2002. Although Borum's policy required Workman to file written notice of claim within 20 days, she did not submit her claim until June 1, 2016—almost fourteen years later. Notwithstanding this delay, Dearborn paid Workman the full $37,000.00 benefit guaranteed by the policy, plus $179.91 in interest at a rate of 0.74% calculated from the date she filed her claim. Workman insists that Dearborn must pay interest calculated from the date of Borum's death—a total of $9,085.19. The district court granted Dearborn's motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291, and now affirm.[1]

**1. Statutory Interpretation.** Workman's appeal largely turns on the meaning of Section 10172.5(a) of the California Insurance Code, which provides as follows:

> [E]ach insurer admitted to transact life insurance, credit life insurance, or accidental death insurance in this state that fails or refuses to pay the proceeds of, or payments under, any policy of life insurance issued by it within 30 days after the date of death of the insured shall pay interest,

[**]     The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

[1] As we conclude that Workman's argument under Cal. Ins. Code § 10172.5(a) fails, and thus affirm the district court's grant of summary judgment for Dearborn, we decline to reach Dearborn's contention that § 10172.5(a) is preempted by ERISA.

2

at a rate not less than the then current rate of interest on death proceeds left on deposit with the insurer computed from the date of the insured's death, on any moneys payable and unpaid after the expiration of the 30-day period.

Cal. Ins. Code § 10172.5(a). Workman insists that this statute requires Dearborn to pay interest "computed from the date of the insured's death." However, this interest does not accrue until money becomes payable—and a life insurance benefit only becomes payable after the submission of a claim in compliance with the terms of the life insurance policy.

When interpreting a California statute, this Court applies California canons of statutory construction, *see In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001), beginning with the plain meaning of the statutory text and turning to extrinsic evidence of legislative intent only if the language is ambiguous, *see Imperial Merch. Servs., Inc. v. Hunt*, 212 P.3d 736, 740 (Cal. 2009). Although § 10172.5(a) imposes interest "calculated from the date of the insured's death," this interest is applied only to "moneys payable and unpaid after the expiration of the 30-day period." Cal. Ins. Code § 10172.5(a). "A sum of money is said to be payable when a person is under an obligation to pay it," Black's Law Dictionary 1128 (6th ed. 1990), and a life insurance provider does not ordinarily have a duty to pay the benefits owed under an insurance policy until the beneficiary has complied with the terms for submitting a claim, *see Paulfrey v. Blue Chip Stamps*, 150 Cal. App. 3d 187, 199–200 (1983) (holding that an insurer's duty to investigate does not arise until notice and proof of

3

claim are filed). Accordingly, § 10172.5(a) requires an insurance provider to pay interest only on money subject to an outstanding claim following the 30-day period. As the benefit guaranteed by Borum's policy was not "payable" until June 1, 2016, the date Workman submitted her claim, no interest accrued before that date.

To the extent this language is ambiguous, the above interpretation best serves the statute's purpose. When a statute is ambiguous, courts adopt "'the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.'" *Lee v. Hanley*, 354 P.3d 334, 339 (Cal. 2015) (quoting *Mays v. City of Los Angeles*, 43 Cal. 4th 313, 321 (2008)). Workman and Dearborn concur that § 10172.5(a) is intended to discourage parties from intentionally delaying settlements of insurance claims. Requiring an insurer to pay additional interest without notice or a formal claim would run counter to this purpose by providing an incentive for beneficiaries to withhold their claims. A construction of § 10172.5(a) that requires beneficiaries to submit a claim before interest may accrue avoids this perverse incentive and aligns with the textual limitation requiring insurers to pay interest only on money that is "payable and unpaid." Accordingly, we decline to adopt Workman's reading of the California Insurance Code and affirm the District Court's conclusion that § 10172.5(a) does not require any interest beyond what Dearborn has already paid.

4

**2. Equitable Relief.** Workman separately claims that Dearborn breached its fiduciary duties under ERISA by retaining a profit on interest derived from Borum's policy benefit. ERISA providers owe fiduciary duties only when exercising their authority to decide claims or manage the assets of a plan. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653–54 (9th Cir. 2019); *King v. Blue Cross & Blue Shield*, 871 F.3d 730, 745 (9th Cir. 2017). When an insurer offers "a guaranteed benefit policy" under an ERISA plan, the assets of the plan include the guaranteed benefit, but do not include the insurer's remaining assets. 29 U.S.C. § 1101(b)(2). Accordingly, the insurer's fiduciary duties extend only to the disposition of the guaranteed benefit. *See Depot., Inc.*, 915 F.3d at 658. In this case, as Borum's policy provided Workman "a guaranteed benefit" of $37,000.00 upon his death, Dearborn was an ERISA fiduciary in the management and disposition of those funds. Nevertheless, it is undisputed that Dearborn fulfilled its fiduciary duties by paying Workman the full policy benefit after Borum's death. As the plan did not guarantee the interest Workman seeks on appeal, Dearborn owed no fiduciary duties in the disposition of that interest.

Workman insists general principles of trust law nevertheless compel Dearborn to disgorge any profits that it earned on Workman's guaranteed benefit following Borum's death. *Cf. Nickel v. Bank of America Nat'l Tr. & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002) ("The elementary rule of restitution is that if you take my

money and make money with it, your profit belongs to me."). However, general trust duties do not always apply to an ERISA administrator, who takes on fiduciary and trust duties "only 'to the extent' that he acts in such a capacity in relation to a plan." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000) (quoting 29 U.S.C. § 1002(21)(A)); *accord Conkright v. Frommert*, 559 U.S. 506, 512 (2010) ("While we are 'guided by principles of trust law' in ERISA cases . . . 'trust law does not tell the entire story.'" (first quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); then quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)); *see, e.g., Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018). As Borum's plan did not provide for interest, Dearborn was not managing plan assets when it refused to pay Workman the interest she seeks. Dearborn thus had no trust duties with respect to that interest. Workman provides no in-circuit authority suggesting that these duties should be expanded beyond their carefully delineated scope, and we decline to do so here. Accordingly, we decline to order disgorgement of the interest Workman seeks on appeal.

**AFFIRMED.**