In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-2703, 01-1685

Frank J. Wsol, Sr., et al.,

Plaintiffs-Appellants,

v.

Fiduciary Management Associates, Inc.
and East West  Institutional Services, Inc.,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1719--Suzanne B. Conlon, Judge.

Argued (No. 00-2703) March 27, 2001;
Submitted (No. 01-1685) August 28, 2001--
Decided September 12, 2001

  Before Posner, Manion, and Williams,
Circuit Judges.

  Posner, Circuit Judge.  The plaintiffs, trustees of a Teamsters pension fund, brought this ERISA suit for breach of fiduciary duty by an investment advisor that the fund had retained, Fiduciary Management Associates, and an "introducing broker" that FMA had in turn retained, East West Institutional Services. At trial (a bench trial), at the close of the plaintiffs' case, the district judge entered judgment for the defendants on the basis of findings of fact that she made on the authority of Fed. R. Civ. P. 52(c). Rule 52(c), added to the civil rules in 1991, streamlines bench trials by authorizing the judge, having heard all the evidence the plaintiff has to offer, to make findings of fact adverse to the plaintiff, including determinations of credibility, without waiting for the defense to put on its case, since the evidence presented by the defendant would be unlikely to help the plaintiff.

  The plaintiffs are also appealing from the judge's denial of their motion under Fed. R. Civ. P. 60(b)(2) to vacate the judgment on the ground of newly

discovered evidence. We have consolidated the two appeals for decision. East West has settled with the plaintiffs, though the settlement is, as we understand it, contingent on the reversal of the judgment. East West has not filed a brief; we do not understand the plaintiffs to be seeking relief against it any longer; and so we'll not discuss its liability.

The appeals raise a number of questions, but one is dispositive and so we ignore the rest. The plaintiffs cannot prevail unless the breach of fiduciary duty either imposed a loss on the plan or generated a profit for FMA "through use of assets of the plan" by FMA. 29 U.S.C. sec. 1109(a); Leigh v. Engle, 727 F.2d 113, 121-22 (7th Cir. 1984); Etter v. J. Pease Construction Co., 963 F.2d 1005, 1009-10 (7th Cir. 1992); Felber v. Estate of Regan, 117 F.3d 1084, 1087 (8th Cir. 1997); James F. Jorden et al., Handbook on ERISA Litigation 3-104 to 3-106 (2d ed., Supp. 2000). If the former, they are entitled to damages, and if the latter, to the recovery ("disgorgement," as the cases call it) of FMA's profit on a theory of unjust enrichment or, equivalently, constructive trust, a standard remedy against malfeasant fiduciaries. The plaintiffs have not established a basis for either remedy, however, and so they lose.

The keys to understanding the case are three terms, "introducing broker," "directed brokerage," and "best execution." An introducing broker (we'll get to the other terms later) is a broker who doesn't actually execute the customer's trades but instead acts as an intermediary between the customer and the executing broker, collecting a fee from the customer that covers the fee charged by that broker. Gilman v. BHC Securities, Inc., 104 F.3d 1418, 1423 (2d Cir. 1997). East West was the introducing broker that FMA used on the trades it made for the plaintiffs' pension fund. FMA paid East West 6 cents per trade and East West turned around and paid the executing broker 2 cents. This spread is common, but the introducing broker does not pocket the entire difference; instead he passes part of it back to the customer (in this case FMA) in the form either of a rebate or of "soft money" consisting of securities analysts' reports and other

investment information. The fund reimbursed FMA for the 6 cents that FMA paid East West.

It turns out that East West was paying a kickback to one of the fund's trustees (since indicted and convicted), who in turn steered FMA to East West. The plaintiffs argue in their main appeal that had FMA investigated East West, as it should in the exercise of due care have done, not only would it have discovered the unsavory connection between the trustee and East West; it would also have discovered that East West's principals were shady and the firm itself little more than a mailbox. Instead FMA treated the trustee later unmasked as a crook to expensive golf outings and hired East West as its introducing broker in order to curry favor with him.

The district judge found that FMA had exercised all due care. But if she was wrong, as the plaintiffs argue with particular vehemence in their Rule 60(b) motion, which presents newly discovered evidence of skullduggery, and not merely of negligence, by FMA, it makes no difference to the outcome of the case. For surprising as this may seem, the shady operation that was East West appears to have given the fund all the benefits it would have received had FMA either retained a reputable introducing broker or dealt directly with the executing brokers. In either case, FMA, which is to say the fund, would have paid 6 cents a share per trade; that is the standard fee and there is no proof that FMA could have obtained comparable trading services for less.

The fund could, it is true, have reduced the execution cost by "directed brokerage," that is, by directing FMA to execute trades through a particular broker. See SEC Release IA-1862, 65 Fed. Reg. 20524, 20538 (Apr. 17, 2000); Donald J. Myers, "Directed Brokerage and 'Soft Dollars' Under ERISA: New Concerns for Plan Fiduciaries," 42 Business Lawyer 553, 568-69 (1987). By thus bypassing the introducing broker, FMA and so the fund would have paid only 2 cents a share per trade. But with directed brokerage, the broker does not guarantee "best execution," which means getting the best terms for the customer that are available

in the market at the time, e.g., Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 135 F.3d 266, 270 (3d Cir. 1998) (en banc); Tannenbaum v. Zeller, 552 F.2d 402, 411 (2d. Cir. 1977); SEC Release 34-37619A, 61 Fed. Reg. 48290, 48322-23 (Sept. 12, 1996), a duty the executing broker owes by virtue of his fiduciary relationship to his customer. See, e.g., United States v. Dial, 757 F.2d 163, 168 (7th Cir. 1985); Magnum Corp. v. Lehman Brothers Kuhn Loeb, Inc., 794 F.2d 198, 200 (5th Cir. 1986). For with directed brokerage the responsibility for making the best deal is with the director, that is, the fund manager. SEC Release 34-23170, 51 Fed. Reg. 16004, 16011 (Apr. 30, 1986). Anyway the fund's trustees had not authorized directed brokerage; so it's a moot point whether FMA would have conferred a net benefit on the fund if, at its customer's direction, it had bypassed East West and dealt directly with the executing brokers on a directed-brokerage basis, paying only 2 cents per trade rather than 6 cents but forgoing best execution.

Was "best execution" worth 4 cents per share? Because best execution has multiple dimensions that tend to be in conflict (such as speed of execution and transaction price), Jonathan R. Macey & Maureen O'Hara, "The Law and Economics of Best Execution," 6 J. Fin. Intermediation 188, 219-20 (1997), its net advantage seems unlikely to equal fully two-thirds of the total cost of executing the transaction (4 6), although remember that part of the 4 cents is rebated either in cash or in investment advice. But these considerations are not material in this case. What is material is that the district judge found as a fact that what the fund got for its 6 cents per share was as good as what it could have bought in a market free of kickbacks and undue influence and that her finding is not clearly erroneous on the record compiled at trial, even as supplemented by the additional evidence that the plaintiffs presented in their Rule 60(b) motion. Despite the disreputable character of East West and the scandalous provenance of its relationship with FMA, the fund received best execution at the same cost that it would have incurred had FMA hired a choir of heavenly angels as introducing brokers or had dealt directly with the executing brokers; and while 4

cents per share seems a stiff price to pay for best execution, it is the standard price and there is no proof that FMA could have gotten a lower price by using an introducing broker other than East West. Although it is conceivable that FMA received less valuable investment advice from East West than it would have from a reputable introducing broker and as a result made poorer investments for the fund, the district judge found the contrary and her finding is not clearly erroneous. So far as appears, FMA's investment performance was as good as it would have been had East West never entered the picture.

Nor is it contended that FMA's management fee was excessive; and the 6 cents a share per trade that it charged back to the fund was, as we have noted already, the standard charge. There is no evidence that FMA obtained a profit that it would not have obtained but for the alleged breach of its fiduciary obligation. If the newly discovered evidence that the plaintiffs unavailingly pressed on the district judge in their Rule 60(b) motion is credited, not only would FMA not have gotten the fund's business had it not retained East West as introducing broker, but FMA knew about the crooked relationship between East West and one of the fund's trustees. But that is just to say that if the evidence is believed, FMA committed a very serious breach of its fiduciary duty. Even so, the fund was not harmed and FMA obtained no greater profit than it would have obtained had it not retained East West.

Besides FMA's management fee, the plaintiffs are seeking the profit that East West made from acting as introducing broker. But East West did not annex a profit opportunity that belonged to the fund. Had FMA used a reputable introducing broker, it might have received more valuable investment information and might as a result have given the plaintiffs better advice; but, as we have said, the plaintiffs failed to prove this.

The remedy of disgorgement is limited to cases in which the breach of the fiduciary obligation enables the fiduciary to make a profit "through [the fiduciary's] use of assets of the plan." The kind of misconduct contemplated is

the fiduciary's appropriating plan assets or investing them in a risky fashion in order to maximize his fee. If no misuse of the funds occur, if no losses are incurred or profits obtained that differ from what they would have been had there been no breach of fiduciary duty, there is no remedy. See Leigh v. Engle, supra, 727 F.2d at 137-39; Etter v. J. Pease Construction Co., supra, 963 F.2d at 1009-10; Felber v. Estate of Regan, supra, 117 F.3d at 1087.

Affirmed.