STRANCH, Circuit Judge,
dissenting.
The issue before us arises under a remedial statute, fashioned on the precepts of equity, which empowers a plan participant to bring a civil action to “recover benefits due” and “to obtain other appropriate equitable relief.” 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3). In the parlance of ERISA and equity jurisprudence, the remedy is to “make whole” the injured. Here, Rochow — a company president whose mental capacity was destroyed over time by a brain infection — sought disability benefits from LINA starting in 2002. Over five years later, in October 2007, he received his first benefit payment (a lump sum of over $300,000), and monthly benefits began. In June 2009, almost seven years after the disability date and eight months after Rochow died in October 2008, LINA paid a second lump sum for underpayment of benefits approximating $420,000.
Rochow sought, and the district court awarded, a make-whole remedy for two ERISA violations committed by LINA, failure to pay benefits due and breach of fiduciary duty. Based on evidence presented, the district court found that LINA engaged in deliberate and willful wrongful acts, created non-existent insurance policy requirements, concocted a knowingly false rationale for its second denial of benefits, closed the administrative record without medical input or evidence, and acted in bad faith. R. 67, Order; Rochow v. Life Ins. Co. of N. Am., 851 F.Supp.2d 1090, 1101 (E.D.Mich.2012). Proceedings in the district court confirmed that LINA also engaged in prohibited self-dealing under 29 U.S.C. § 1106(b) in the course of delaying payment of Rochow’s disability benefits for more than seven years. During that lengthy period of delay, rather than segregating the disability benefits it owed to Rochow in an interest-bearing account for his later use, LINA commingled Rochow’s benefits with company funds in a general equity account used in part for corporate investment. Because Rochow earned a high salary before the onset of his disability, LINA’s intentional delay in paying Rochow’s substantial disability benefits for more than seven years allowed LINA to earn millions of dollars in profit for its own gain, in breach of its fiduciary duty not to engage in self-dealing. 29 U.S.C. §§ 1104(a)(1), 1106(b). Based on expert evidence, the district court found that LINA’s average rate of return during the seven-year period was 26%. Rochow’s health deteriorated during that time and he was forced to meet the financial demands of everyday living and serious ill *383 ness without employment income or the disability benefits promised under the Plan. LINA’s fiduciary wrongdoing and self-dealing warrant equitable remedies under § 1132(a)(3) — an accounting and disgorgement of the considerable profits LINA earned on the benefits it withheld from Rochow.
The majority avers that such equitable remedies are prohibited under ERISA jurisprudence because obtaining a remedy under both § 1132(a)(1)(B) and § 1132(a)(3) amounts to double recovery. Its insistence that Rochow is not entitled to disgorgement of LINA’s profit under § 1132(a)(3) rests on a faulty premise — its assumption that Rochow suffered the single injury of LINA’s arbitrary and capri‘cious denial of benefits. Maj. Op. at 369-70. The majority states that, [allowing Rochow to recover disgorged profits under § 502(a)(3), in addition to his recovery under § 502(a)(1)(B), based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty, would— absent a showing that the § 502(a)(1)(B) remedy is inadequate — result in an impermissible duplicative recovery, contrary to clear Supreme Court and Sixth Circuit precedent. Maj. Op. at 370-71. Relying primarily on Varity Corp. v. Howe, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), and Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir.1998), the majority concludes that “Rochow is not entitled to relief under the catchall provision” of § 1132(a)(3) because “such relief is unnecessary and unavailable” and “he has an adequate remedy under” § 1132(a)(1)(B). Maj. Op. at 372-73.
I will demonstrate below that Varity Corp. and numerous cases decided after it fully support Rochow’s recovery of benefits under § 1132(a)(1)(B) and the disgorgement of LINA’s profit under § 1132(a)(3). Wilkins is inapplicable to the issues before us because it is legally and factually distinguishable. Wilkins sued for disability benefits under § 1132(a)(1)(B) and failed to prove that his medical condition warranted payment of plan benefits. Wilkins, 150 F.3d at 612—13. Trying a second time to obtain plan benefits, he “repackaged” the benefits claim as a breach of fiduciary duty under § 1132(a)(3), but he sought a traditionally legal remedy — compensatory damages. Id. at 613-14. We barred the “repackaging” of the claim because Wilkins had an adequate remedy to recover benefits under § 1132(a)(1)(B) and recovery of compensatory damages would not constitute “other appropriate equitable relief’ under § 1132(a)(3). Id. at 615-16. Wilkins thus insures that a plan participant cannot make an end-run around a denial of benefits under § 1132(a)(1)(B) by “repackaging” the claim and seeking compensatory damages under § 1132(a)(3).
In contrast to the facts of Wilkins, LINA injured Rochow in two distinct ways: by arbitrarily and capriciously denying his disability benefits claim and by breaching its fiduciary duties to him. LINA’s denial of benefits breached the Plan terms; LINA’s breach of its fiduciary obligations violated ERISA statutes and added the element of wrongdoing to the contract breach. Equity has long recognized that “[a] trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary.” Skinner v. Northrop Grumman Retirement Plan B, 673 F.3d 1162, 1167 (9th Cir.2012). Unlike Wilkins, Rochow sued under § 1132(a)(1)(B) to recover Plan benefits and under § 1132(a)(3) to obtain an accounting and disgorgement of profits wrongfully earned through LINA’s breach of its fiduciary duties — two separate remedies for two separate injuries under two separate sections of § 1132. Unlike Wilkins, Rochow proved that his medical eon *384 dition warranted payment of Plan benefits. And unlike Wilkins, Rochow sought his second remedy to attain make-whole relief. These two remedies are not duplicative and neither repackages the other. Both remedies are necessary, working in tandem, to make Rochow whole for LINA’s ERISA violations.
By falsely characterizing the wrongs Rochow suffered and by denying the availability of equitable remedies, the majority opinion stands at odds with governing law and with the facts before us. Supreme Court opinions, our precedent, and cases from our sister circuits support the availability of dual ERISA remedies where two distinct injuries exist and two remedies are necessary to make the plan participant or beneficiary whole. I would affirm the district court, but I would remand the case for a recalculation of the amount of profit LINA must disgorge. Accordingly, I must respectfully dissent from. the majority opinion.
I. ERISA DEFINES LINA’S DUTIES AS A FIDUCIARY
“ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Congress imposed fiduciary duties on ERISA plan sponsors and administrators that are the highest known to the law, Gregg v. Transp. Workers of Am. Int’l, 343 F.3d 833, 841 (6th Cir.2003), and in doing so, Congress drew much of ERISA’s content from the common law of trusts. Varity Corp., 516 U.S. at 496, 116 S.Ct. 1065. These fiduciary duties attach to particular persons or entities engaged in the performance of specific ERISA functions. Edmonson v. Lincoln Nat’l Life. Ins. Co., 725 F.3d 406, 413 (3d Cir.2013).
A fiduciary’s first obligation is to “discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.” 29 U.S.C. § 1104(a)(1). This duty of loyalty extends to the individual plan participants and beneficiaries, not only to the ERISA plan itself. Varity Corp., 516 U.S. at 507, 116 S.Ct. 1065; Cent. States, S.E. & N.W. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 571-72, 105 S.Ct. 2833, 86 L.Ed.2d 447 '(1985). A fiduciary has “an unwavering duty” to act as a prudent person would act in a similar situation and “for the exclusive purpose” of insuring that benefits are provided to plan participants and their beneficiaries. 29 U.S.C. § 1104(a); Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich., 751 F.3d 740, 751 (6th Cir.2014); Gregg, 343 F.3d at 841; James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 448-49 (6th Cir.2002). ERISA expressly forbids a fiduciary from “dealfing] with the assets of the plan in his own interest or for his own account.” 29 U.S.C. § 1106(b)(1). The “absolute bar against self dealing” prevents a fiduciary from “realizing a financial gain” at the expense of the plan participants or beneficiaries. Hi-Lex Controls, Inc., 751 F.3d at 750 (quoting Brock v. Hendershott, 840 F.2d 339, 341 (6th Cir.1988)); Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield of Mich., 722 F.3d 861, 868 (6th Cir.2013).
II. ERISA DEFINES REMEDIES FOR BREACH OF FIDUCIARY DUTY

A. Congress authorized equitable remedies in § 1132(a)(3)

Congress designed ERISA to include equitable remedies that run directly to the individual plan participant or beneficiary who is injured by a fiduciary breach. The Supreme Court tells us that the “words of [§ 1132(a)(3) ] — ‘appropriate equitable re *385 lief to ‘redress’ any ‘act or practice which violates any provision of this title’ — are broad enough to cover individual relief for breach of a fiduciary obligation.” Varity Corp., 516 U.S. at 510, 116 S.Ct. 1065. The structure of § 1132 reveals that one of the two catchall provisions providing appropriate equitable relief for breaches of fiduciary duty that run to an injured beneficiary is § 1132(a)(3). Id. at 512, 116 S.Ct. 1065. This catchall remedial provision acts “as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy.” Id.
In the majority’s view, Varity Corp. emphasizes “that ERISA remedies are concerned with the adequacy of relief to redress the claimant’s injury” and that “equitable relief is not ordinarily appropriate where Congress has elsewhere provided adequate means of redress for a claimant’s injury. In other words, a claimant cannot pursue a breach-of-fiduciary-duty claim under § [1132](a)(3) based solely on an arbitrary and capricious denial of benefits where the § [1132](a)(l)(B) remedy is adequate to make the claimant whole.” Maj. Op. at 371. If that were the case, the majority worries, then any arbitrary and capricious denial of plan benefits would potentially subject a plan fiduciary to disgorgement of profits under § 1132(a)(3) “after the claimant recovered for wrongful denial of benefits” under § 1132(a)(1)(B). Maj. Op. at 371-72.
This unfounded fear is allayed by a proper interpretation of Varity Corp., the eases following it, and the Supreme Court’s recent decision in CIGNA Corp. v. Amara, — U.S. -, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). These cases demonstrate that a participant or beneficiary may recover under § 1132(a)(1)(B) for an arbitrary and capricious denial of plan benefits and may recover further equitable relief under § 1132(a)(3) to redress a breach of fiduciary duty. Together these remedies provide the make-whole relief Congress intended.
In Varity Corp., the plaintiffs’ employer, serving also as administrator of a self-funded employee welfare benefit plan, persuaded the plaintiffs by deception to transfer their employment to a newly-formed subsidiary, thereby withdrawing voluntarily from the welfare benefit plan and forfeiting benefits under it in exchange for the employer’s assurances that the plaintiffs would receive the same benefits following transfer. 516 U.S. at 491-94, 116 S.Ct. 1065. Just as Varity Corporation had planned, the insolvency of the new subsidiary stripped the employees of welfare benefits. Id. at 494, 116 S.Ct. 1065. The employees could not sue under § 1132(a)(1)(B) to recover benefits because the plan was defunct. They could, however, and did sue for and obtain “appropriate equitable relief’ under § 1132(a)(3) — their reinstatement to a different employee plan. Id. at 495, 116 S.Ct. 1065.
The Supreme Court affirmed the reinstatement, holding that individuals may sue under the catchall provision of § 1132(a)(3) to obtain “other appropriate equitable relief’ to remedy a breach of fiduciary duty. Id. at 510-13, 116 S.Ct. 1065. Given the objectives of the ERISA statute, the case explains, “it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy.” Id. at 513, 116 S.Ct. 1065.
Like the majority here, the amici in Varity Corp. worried that an individual would be able to “repackage” a denial of benefits claim that is normally reviewed deferentially under the arbitrary and capricious standard of Firestone Tire & Rub *386 ber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and transform it into a breach of fiduciary duty claim decided under the “rigid level of conduct” expected of fiduciaries. Id. at 513-14, 109 S.Ct. 948.
The Supreme Court dismissed their concern. “[Cjharacterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply when reviewing the administrator’s decision to deny benefits.” Id. at 514, 109 S.Ct. 948. “After all, Firestone ... based its decision upon the same common-law trust doctrines that govern standards of fiduciary conduct.” Id. at 514-15, 109 S.Ct. 948. Dismissing amici ’s concern that “lawyers will complicate ordinary benefit claims by dressing them up in ‘fiduciary duty’ clothing,” id. at 514, 109 S.Ct. 948, the Court explained “that where Congress elsewhere provided adequate relief for a beneficiary’s injury, there will likely be no need for further equitable relief, in which case such relief normally would not be ‘appropriate.’ ” Id. at 515, 109 S.Ct. 948 (emphasis added).
The majority transforms the Supreme Court’s conditional language into an absolute bar to Rochow’s claims, misconstruing the Court’s instruction that ERISA authorizes “further equitable relief’ if relief available “elsewhere” is inadequate. This may be the unusual case that entails two injuries, but Varity Corp. provides no basis for denying an equitable remedy necessary to accomplish make-whole relief. The repackaging fears the majority expresses, like those raised by amici in Varity Corp., should be met with the same response: there is not “any ERISA-related purpose that denial of a remedy would serve. Rather, ... granting a remedy is consistent with the literal language of the statute, the Act’s purposes, and pre-existing trust law.” Id.

B. Remedies under § 1132(a)(3) were traditionally available in equity

Section 1132(a)(3) “countenances only such relief as will enforce” ERISA’s provisions or the terms of the plan, and it “authorizes the kinds of relief ‘typically available in equity’ in the days of ‘the divided bench,’ before law and equity merged.” US Airways, Inc. v. McCutchen, — U.S. -, 133 S.Ct. 1537, 1544, 1548, 185 L.Ed.2d 654 (2013) (quoting Mertens v. Hewitt Assoc., 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). The most definitive explanation of the types of equitable remedies available under § 1132(a)(3) is found in the Supreme Court’s pronouncement in Cigna Corp. v. Amara, — U.S. -, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). Because Congress specified that courts may grant “other appropriate equitable relief’ under § 1132(a)(3), courts may employ remedies that were traditionally available in equity, including reformation of contract, injunctions, mandamus, restitution, and surcharge, which is a monetary remedy against a trustee or fiduciary. Id. at 1878-80. “[T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief.” Id. at 1880. This is because courts sitting in equity “possessed the power to provide relief in the form of monetary ‘compensation’ for a loss resulting from a trustee’s breach of duty, or to prevent the trustee’s unjust enrichment.” Id. (citing Restatement (Third) of Trusts § 95, and Comment a (Tent. Draft No. 5, Mar. 2, 2009)). The surcharge remedy extends “to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary” and can be used to accomplish “make-whole relief.” Id. The equity courts did not require a showing of detrimental reliance in surcharge cases but “would ‘mold the relief to *387 protect the rights of the beneficiary according to the situation involved.’ ” Id. at 1881 (quoting Bogert’s Trusts & Trustees § 861, at 4). A fiduciary may be surcharged under § 1132(a)(3) if the plaintiff proves actual harm and causation by a preponderance of the evidence, and actual harm might “come from the loss of a right protected by ERISA or its trust-law antecedents.” Id.
In explaining the scope of equitable remedies available under § 1132(a)(3), Amara also clarified two previous Supreme Court cases, correcting lower court decisions that had interpreted the cases as narrowing the scope of “other appropriate equitable relief’ available under § 1132(a)(3). Amara, 131 S.Ct. at 1878 (referring to Mertens v. Hewitt Assoc., 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), and Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)). Mertens does not foreclose equitable relief against a plan fiduciary, as some courts had held, because in that case a plan beneficiary sought compensatory damages from a non-fiduciary, a private firm that provided actuarial services to a trustee. Id. (citing Mertens, 508 U.S. at 253, 255, 256, 113 S.Ct. 2063). Relief was not available under § 1132(a)(3) because the beneficiary sought traditionally legal, not equitable relief, against a non-fiduciary. Id. In Great-West, the suit was brought by the fiduciary against the beneficiary. After the injured beneficiary recovered compensatory damages from a tortfeasor, the fiduciary sought reimbursement for the medical expenses it had paid on the beneficiary’s behalf. Id. The fiduciary tried to place a lien on the money the beneficiary collected, but a lien is traditionally considered to be legal, not equitable, relief. Id. at 1878-79. Because the fiduciary did not seek an equitable remedy — the placement of a constructive trust on the particular money the tortfeasor paid to the beneficiary — the Court determined that equitable relief under § 1132(a)(3) was not available. Id. Mertens and Great-West thus do not present any obstacle to Rochow’s use of § 1132(a)(3) to recover traditional equitable relief from LINA, a breaching fiduciary, even if that remedy is formulated to avoid the unjust enrichment of the fiduciary. See Amara, 131 S.Ct. at 1879-80.
Reading Amara and Varity Corp. together, we see that the remedies awarded to Rochow comport with the statute, its purposes, and trust law. The principle is clear that a plaintiff may pursue relief under both § 1132(a)(1)(B) and (a)(3) if wrongly denied benefits are recovered under (a)(1)(B) and “other appropriate equitable relief’ — something in addition to the award of benefits — is necessary to make the plaintiff whole for a breach of fiduciary duty. In this case, requiring LINA to disgorge its profits earned on wrongly withheld benefits, accomplished under (a)(3), was necessary to make Rochow whole and to prevent LINA’s unjust enrichment.
Our sister circuits recognize that Amara corrects misunderstandings of the lower courts that have led to the denial of equitable remedies authorized by § 1132(a)(3). After Amara, the Fourth Circuit explained, it is clear “that Section § 1132(a)(3) allows for remedies traditionally available at equity and that those remedies include surcharge and estoppel[,]” remedies “at the heart” of the appeal before that court. McCravy v. Metro. Life Ins. Co., 690 F.3d 176, 177-78 (4th Cir.2012). The Fifth Circuit characterized Amara as stating “an expansion of the kind of relief available” under § 1132(a)(3) “when the plaintiff is suing a plan fiduciary and the relief sought makes the plaintiff whole for losses caused by the defendant’s breach of a fiduciary duty.” Gearlds v. *388 Entergy Servs., Inc., 709 F.3d 448, 450 (5th Cir.2013). The Seventh Circuit pointed to Amara as “clarifying] that equitable relief may come in the form of money damages when the defendant is a trustee in breach of a fiduciary duty.” Kenseth v. Dean Health Plan, Inc., 722 F.3d 869, 878-79 (7th Cir.2013). The Eighth Circuit observed that “Amara changed the legal landscape by clearly spelling out the possibility of an equitable remedy under [§ 1132(a)(3) ] for breaches of fiduciary obligations by plan administrators.” Silva v. Metro. Life Ins. Co., 762 F.3d 711, 722 (8th Cir.2014). And the Ninth Circuit recently reversed and remanded an ERISA case in part so that the district court could determine in the first instance under § 1132(a)(3) whether a trustee’s fiduciary breach injured the beneficiary and wheth er the surcharge remedy discussed in Amara is available to the beneficiary. Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 962-63 (9th Cir.2014).
Members in the majority here have read Amara to leave “open the possibility that ‘appropriate equitable relief could potentially be awarded” under § 1132(a)(3). Lipker v. AK Steel Corp., 698 F.3d 923, 931 n. 4 (6th Cir.2012). In this case, the majority agrees with Lipker and the other circuit cases cited above that equitable relief is available under § 1132(a)(3) “to redress an ERISA violation by a plan fiduciary.” Maj. Op. at 374. And two of our prior cases acknowledge the availability of dual ERISA claims and remedies under certain circumstances. In Hill v. Blue Cross & Blue Shield of Michigan, 409 F.3d 710, 718 (6th Cir.2005), we reversed the dismissal of a claim under § 1132(a)(3), because that claim challenged defects in systemic, plan-wide claims-handling procedures, an injury different from the denial of claims for individual benefits brought under § 1132(a)(1)(B). Similar reasoning is apparent in Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 840-41 (6th Cir.2007), where we determined that the plaintiff asserted two distinct injuries permitting claims and recovery under both § 1132(a)(1)(B) and (a)(3). We thus learn from our own cases that ERISA’s remedy provisions are not mutually exclusive.
III. LINA BREACHED ITS FIDUCIARY DUTY TO ROCHOW
The majority nonetheless denies relief on the ground that “Rochow did not suffer an injury remediable” under § 1132(a)(3). Maj. Op. at 374. That statement is plainly contrary to the factual record and extensive case law concerning the types of injuries that plan participants or beneficiaries may redress through equitable remedies available under § 1132(a)(3).
We previously recognized that LINA breached its fiduciary duties, Rochow v. Life Ins. Co. of N. Am., 482 F.3d 860, 866 (6th Cir.2007) (“Rochow I”), and the majority acknowledges as much. Maj. Op. at 366-67. We ruled in the earlier appeal that LINA’s decision to deny Rochow disability benefits was not made solely in Rochow’s interest — in other words, LINA breached its duty of loyalty to Rochow — and LINA’s decision to deny benefits was not made for the exclusive purpose of providing benefits to Rochow as required by § 1104(a)(1). Rochow I, 482 F.3d at 866.
The majority opinion and the concurrence point out that this case comes to us with a complex procedural history, pockmarked by irregularities. While I don’t disagree that the case is procedurally complex, I do disagree with the conclusion that the district court reached a final judgment prior to our decision in Rochow I and that it violated the mandate rule by permitting .the parties to litigate the disgorgement *389 remedy for the breach of fiduciary duty claim after Rochow I. To be sure, the district court clerk docketed a separate document entitled “Judgment” on the same day that the district court entered the summary judgment order later affirmed in Rochow I, but the “record demonstrates ... that [this] document was not a judgment but a mere clerical error.” Philhall Corp. v. United States, 546 F.2d 210, 213 (6th Cir.1976). The court had ruled on LINA’s liability in the context of Rochow’s motion for partial summary judgment and LINA’s cross-motion for summary judgment. The court had not made the requisite determination of the remedy. With this important issue outstanding, certainly the district court did not “intend[ ] the document to be a final judgment.” Id.; 15B Charles Alan Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 3914.28 (2d ed.) (“[A] summary judgment that determines liability but leaves damages or other relief open for further proceedings is not final.”)
Moreover, the document purporting to be a final judgment “was not legally sufficient to constitute a final judgment.” Philhall Corp., 546 F.2d at 213. The Supreme Court has instructed that “it is necessary to determine whether the language ... (of any purported judgment) embodies the essential elements of a judgment for money and clearly evidences the judge’s intention that it shall be his final act in the case. If it does so, it constitutes his final judgment.” Id. (quoting United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 232, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958)). “[A] final judgment for money must, at least, determine or specify the means for determining, the amount.” F. & M. Schaefer Brewing Co., 356 U.S. at 233, 78 S.Ct. 674. As in Philhall Corp., 546 F.2d at 213, the document entered by the clerk below “did not have the indicia of a final judgment” because it failed to state that Rochow had prevailed and it did not memorialize any monetary award. Instead, the document, erroneously “dismissed” the case, clearly contradicting the district court’s summary judgment order finding in favor of Rochow on liability. LINA filed a notice of appeal, effectively divesting the district court of jurisdiction to proceed with the litigation pending resolution of the appeal.
After our mandate issued in Rochow I, the concurrence posits, the district court lacked jurisdiction to take any further action in the ease by operation of the mandate rule. The Hamilton case cited in the concurrence points out that the mandate rule is “discretionary, rather than jurisdictional,” United States v. Hamilton, 440 F.3d 693, 697 (5th Cir.2006), and we have said the same thing, albeit in an unpublished case. Mylant v. United States, 48 Fed.Appx. 509, 512 (6th Cir.2002) (observing that the mandate rule is one of “policy and practice, not a jurisdictional limitation”). “The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals.” United States v. Campbell, 168 F.3d 263, 265 (6th Cir.1999). The concurrence recognizes that the Rochow I panel affirmed the district court’s summary judgment order on liability and did not issue any type of remand to the district court. Although the district court was bound to honor our Rochow I decision in completing the litigation, as “with all applications of the law of the case doctrine,” the district court could “consider those issues not decided expressly or impliedly by the appellate court.” Jones v. Lewis, 957 F.2d 260, 262 (6th Cir.1992). Taking up the case again after the Rochow I appeal, the district court determined with finality a monetary award for Rochow that included disgorgement for LINA’s fiduciary breach. The court’s final decision in no way con *390 flicted with the Rochow I mandate. In this second appeal, a panel of our court affirmed the district court’s final decision, Rochow v. LINA, 737 F.3d 415 (6th Cir.2013) (“Rochow II ”), and that same final decision is presently before us for en banc review. Consequently, any procedural missteps that occurred earlier in the case are ultimately immaterial for purposes of our en banc decision.
Contrary to the majority’s assertion that the district court failed to identify any grounds to support a breach of fiduciary duty claim, Rochow asks us to affirm the district court’s findings that LINA’s conduct involved a number of deliberate and willful wrongful acts, including requiring Rochow to meet insurance policy requirements that did not exist, devising a knowingly false rationale for denying his benefits appeal, and acting without appropriate medical input or evidence. R. 67, Order; Rochow, 851 F.Supp.2d at 1101. On the record before us, these findings are not clearly erroneous. See Cultrona v. Nationwide Life Ins. Co., 748 F.3d 698, 706 (6th Cir.2014). LINA’s fiduciary wrongdoing, separate from its arbitrary and capricious denial of plan benefits, warrants an equitable remedy under § 1132(a)(3).
IV. BREACH OF FIDUCIARY DUTY REQUIRES A REMEDY
Persisting in the fiction that Rochow seeks to recover twice for the same injury, the majority incorrectly posits that “the district court thus treated its finding of an arbitrary and capricious denial of benefits, in and of itself, as a breach of fiduciary duty,” and claims to be unaware of any “persuasive authority for the proposition that a wrongful denial of benefits in and of itself constitutes a breach of fiduciary duty.” Maj. Op. at 370 n. 1. Even if that were the issue — and it is not because LINA engaged in fiduciary misconduct in addition to denying Rochow’s -benefits — at least four circuits besides our own (the Second, Third, Seventh, and Eighth) recognize that a fiduciary’s arbitrary and capricious delay in paying benefits due under a plan in itself can constitute a breach of fiduciary duty. I begin with our own precedent.
More than twenty years ago we stated the well-established principle that “ERISA requires that a retirement plan be operated for the exclusive benefit of the employees and beneficiaries.” Sweet v. Consol. Aluminum Corp., 913 F.2d 268, 270 (6th Cir.1990). Although we assumed there that a trustee acted prudently in withholding pension funds until a certain date, we nonetheless held that the delay in payment conferred a benefit on the trustee. Id. “Any additional time one gains, rightfully or wrongfully, in not having to submit payment of a sum of money owed another is without doubt a benefit. Moreover, the payee ... has been deprived of the benefit of those payments.” Id. We expressly held that “[t]o allow the Fund to retain the interest it earned on funds wrongfully withheld from a beneficiary would be to approve of an unjust enrichment. Further, the relief granted would fall short of making the beneficiary whole because he has been denied the use of money which was his.” Id. (internal quotation marks omitted).
Ten years after Sweet we upheld a district court’s decision requiring an ERISA fiduciary to pay to the plan participant class certain benefits along with the rate of return the fiduciary actually realized on the use of that withheld money. Rybarczyk v. TRW, Inc., 235 F.3d 975, 977-78, 986 (6th Cir.2000). TRW argued that imposing the actual rate of return was “unprecedented,” id. at 986, but we disagreed, pointing to the Seventh Circuit’s decision in Lorenzen v. Employees Retirement *391 Plan of Sperry & Hutchinson Co., 896 F.2d 228 (7th Cir.1990). In that case an employee’s widow contended that the administrator of a retirement plan violated its fiduciary duties to her and to her deceased husband causing a loss in retirement benefits. Id. at 230. The Seventh Circuit held that § 1132(a)(3) authorizes a civil action by a participant or beneficiary to obtain “appropriate equitable relief’ for a violation of plan terms and that equitable relief to remedy a breach of fiduciary duty can include a payment of money. Id. (citing Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 154 n. 10, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Because the retirement plan had held money that belonged to the widow, the Seventh Circuit stated: “Now that the collateral dispute is over, the plan must return [the money] to her together loith the fruits that it has gleaned by holding on to it.” Id. at 236-37 (emphasis added). Relying on this passage from Lorenzen and our own prior opinion on unjust enrichment, Sweet, 913 F.2d at 270, we held that using the rate of return “actually realized by TRW on the relevant funds seems an appropriate way of avoiding unjust enrichment.” Rybarczyk, 235 F.3d at 986. Importantly, we said that requiring TRW to pay the actual rate of return “merely deprives TRW of its profit on the wrongfully denied benefits.” Id. (emphasis added). We decided this approach was equitable, not punitive, and appropriate under the circumstances where TRW “would arguably receive a windfall” if we permitted TRW to pay compensation for the delayed payment of benefits to the plaintiff that was lower than TRW’s actual rate of return. Id. at 987.
Sweet and Rybarczyk align closely with the law of our sister circuits. The Second Circuit considered a case in which MetLife denied benefits for nearly five years after submission of a claim, but then reversed its prior denials without explanation and paid retroactive benefits in a lump sum without compensating the claimant for the delay in payment. Dunnigan v. Metro. Life Ins. Co., 277 F.3d 223, 226 (2d Cir.2002). Having received disability payments after almost five years of delay, Dunnigan filed suit under § 1132(a)(3) alleging that MetLife breached its fiduciary duties by delaying payment and MetLife was unjustly enriched through its breach. Id. at 226-27. Dunnigan asked for a constructive trust on the amount MetLife earned by failing to pay the delayed benefits when due or, alternatively, restitution equal to the amount MetLife earnéd on the late payment and/or disgorgement of Met-Life’s profits. Id. at 227. The Second Circuit ruled that MetLife’s delay in paying benefits long after Dunnigan was entitled to receive them constituted a breach of fiduciary duty because the “delay enriche[d] the fiduciary at the expense of the beneficiary.” Id. at 230. The court further concluded that no showing of bad faith by MetLife was required in order for Dunnigan to prevail, id. at 229-30, and she was entitled to an “equitable make-whole remedy” under § 1132(a)(3) for MetLife’s breach of fiduciary duty. Id. at 229. The court vacated the dismissal of Dunnigan’s suit and remanded for further proceedings. Id. at 232.
The Seventh Circuit reached similar decisions in two cases, Clair v. Harris Trust & Savings Bank, 190 F.3d 495 (7th Cir.1999), and May Department Stores Co. v. Federal Insurance Co., 305 F.3d 597 (7th Cir.2002), both involving § 1132(a)(3) claims for equitable remedies in addition to payment of benefits. In Clair, participants in a defined-contribution retirement plan sued for breach of fiduciary duty because their benefits were not paid to them in a timely fashion and no compensation for the delay was offered. Clair, 190 F.3d *392 at 496-97. The participants characterized their remedy as “restitution of the wrongful gain that the plan obtained by having the interest-free use of money rightfully theirs under the terms of the plan.” Id. at 498. Explaining that restitution can be either legal or equitable, the court noted that restitution is equitable when the person seeking the remedy complains of a breach of trust, as the plaintiffs did. Id. Constructive trust “is an equitable remedy commonly sought and granted in cases of unjust enrichment. It operates much like restitution — indeed it is sometimes referred to as a restitutionary remedy, but it is securely equitable because it is never a legal remedy.” Id. (citing 1 Dan B. Dobbs, Law of Remedies § 4.3, at 587 (2d ed.1993)). According to the Seventh Circuit, “such relief is squarely within the scope of’ § 1132(a)(3). Id. at 499. Although the plaintiffs in Clair did not prevail on the merits, the court determined that they were “entitled to maintain this suit” under § 1132(a)(3). Id.
In May Department Stores Co., 305 F.3d at 603, the Seventh Circuit followed Clair and the Second Circuit’s Dwnnigan opinion to conclude that the “wrongful withholding of benefits due can entitle the beneficiary to impose a constructive trust on interest on the withheld benefits, an equitable remedy that results in a money payment to the plaintiff’ under § 1132(a)(3). The court explained:
By withholding benefits, a plan can obtain interest that would otherwise be obtained by the beneficiary. That interest is not itself a benefit, and so the beneficiary cannot bring a suit under (a)(1)(B) to recover it. But he can sue to recover it under (a)(3), because it is an amount by which the plan has unjustly enriched itself, and unjust enrichment is a basis, indeed the usual basis, for imposing a constructive trust on a sum of money.
Id. at 603 (citing Wsol v. Fiduciary Mgt. Assoc., Inc., 266 F.3d 654, 656 (7th Cir.2001), and Fisher v. Trainor, 242 F.3d 24, 31 (1st Cir.2001)).
The same principles govern in the Third Circuit. In Fotta v. Trustees of United Mine Workers of America, 165 F.3d 209, 211 (3d Cir.1998), a plan participant invoked § 1132(a)(1)(B) and § 1132(a)(3) to recover compensation for delayed payment of benefits where the benefits ultimately were paid without litigation. The Third Circuit determined that § 1132(a)(3) was “the appropriate vehicle” to recover monetary compensation for delayed benefits because such an award “serves to prevent unjust enrichment. Restitution — the traditional remedy for unjust enriehment-his widely, if not universally, regarded as a tool of equity.” Id. at 213 (citing Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (“Money damages are considered equitable when ‘they are restitutionary.’ ”)). The court rejected the notion that it was engrafting a remedy on a statute that Congress did not intend to provide. Id. at 214. Rather, the court determined that it “effectuate[d] ERISA’s objectives by recognizing, under principles of equity, that beneficiaries should be fully compensated and that any unjust enrichment of plans at beneficiaries’ expense should be avoided.” Id. Accordingly, relying on § 1132(a)(3), the court held “that a beneficiary of an ERISA plan may bring an action for interest on delayed benefits payments ... irrespective of whether the beneficiary also seeks to recover unpaid benefits. Because the remedy we recognize here is equitable in nature, its award involves an exercise of judicial discretion.” Id.
Significantly, Supreme Court Justice Ahito, then a circuit judge on the Third Cir *393 cuit, concurred in the Fotta opinion, observing:
If the plaintiff in this case can establish that the trustees violated the plan by failing to pay his benefits on time, an award of interest would constitute “appropriate equitable relief.” Such an award is recognized as appropriate equitable relief in comparable circumstances under the law of trusts. See Restatement (2d) of Trusts § 207 at 470 (1959); 3 Austin Wakeman Scott and William Franklin Fratcher, The Law of Trusts § 207.1 at 262-63 (4th ed.1987); Nedd v. United Mine Workers of America, 556 F.2d 190, 207 (3d Cir.1977); Toombs v. Daniels, 361 N.W.2d 801, 810 (Minn.1985). Thus, this is not a case like Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), in which we were asked to supplement the remedies specified in the statute.
Id. at 215.
In addition to the Second, Third and Seventh Circuits, the Eighth Circuit also adheres to the proposition that a fiduciary’s delay in paying benefits due under a plan constitutes a breach of fiduciary duty that may be rectified through an action filed under § 1132(a)(3). “It is undisputed that an accounting for profits — the remedy that allows for the disgorgement of profits awarded by the district court — is a type of relief that was typically available in equity and therefore is appropriate under § 1132(a)(3)(B).” Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1008 (8th Cir.2004). “An accounting for profits is one of a category of traditionally restitutionary remedies in equity, and is often invoked in conjunction with a constructive trust.” Id. The court explained that “[a]n accounting is imposed when the property subject to the constructive trust produces profits while in the defendant’s possession. The defendant is forced to disgorge those profits, although it is not necessary for the plaintiff to identify any particular res or fund of money holding the profits.” Id.
Significantly, “[ujnder traditional rules of equity, a defendant who owes a fiduciary duty to a plaintiff may be forced to disgorge any profits made by breaching that duty, even if the defendant’s breach was simply a failure to perform its obligations under a contract. Id. (emphasis added).” If a fiduciary breaches a contract and also breaches a fiduciary duty, that fiduciary can be forced to disgorge the profits he earned as a result of his wrong. Id. (quoting 1 Dobbs . § 4.3(5), at 611 n.16). “The important ingredient added by the fiduciary status, however, is not that status in itself; what is added is wrongdoing as distinct from contract breach.” Id. at 1008-09 (quoting 1 Dobbs § 4.3(5), at 611 n.16; Valdes v. Larrinaga, 233 U.S. 705, 709, 34 S.Ct. 750, 58 L.Ed. 1163 (1914)) (“holding that a ‘proper case for equitable relief existed where the defendant breached a fiduciary duty to the plaintiff by failing to pay money owing under the contract”). Based on these principles, the Eighth Circuit held that First Reliance owed a fiduciary duty to Parke, First Reliance breached that duty, and First Reliance could be forced under § 1132(a)(3) to disgorge its profits earned as a result of the breach. Id. at 1009. See also Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 212-14 (3d Cir.2004) (following Fotta and Parke to hold that an ERISA beneficiary could force disgorgement of profits earned on withheld benefits). As do several other circuits, the Eighth Circuit authorizes the remedy that the district court below awarded to Rochow.
Thus, our own cases and a litany of others from four of our sister circuits undermine the majority’s premise that no *394 legal basis exists to conclude that LINA’s delay in payment of benefits to Rochow constituted both an arbitrary and capricious denial of plan benefits under § 1132(a)(1)(B) and a breach of LINA’s fiduciary duties remediable under § 1132(a)(3). The majority ignores these cases because they correct the majority’s mistaken impression that the district court’s “award reflects concern that LINA had wrongfully gained something, a consideration beyond the ken of ERISA make-whole remedies.” Maj. Op. at 371. Not only does the district court’s award appropriately address LINA’s wrongful gain at Rochow’s expense, but the relief for the wrongful gain falls squarely within ERISA’s equitable remedies, as recognized by the Supreme Court, our court, and other circuits. “ERISA’s duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs,” and the remedy of disgorgement exists to deprive “wrongdoers of ill-gotten gains,” not “to compensate for a loss.” Edmonson, 725 F.3d at 415 (internal quotation marks omitted); Leigh v. Engle, 727 F.2d 113, 122 (7th Cir.1984) (“ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss.”). According to the majority, the payment of benefits, attorney’s fees, and prejudgment interest are sufficient to compensate Rochow for his injuries. But only the disgorgement of ill-gotten profits can wholly remedy LINA’s breach of its fiduciary duties.
The court below got it exactly right. By arbitrarily and capriciously failing to pay Rochow benefits owed under the terms of the plan and by delaying the payment of full benefits for more than seven years to enrich itself, LINA violated both the plan terms and its fiduciary duties under ERISA. LINA’s wrongful gain of profit, earned through breach of its fiduciary duties, can be equitably remedied under § 1132(a)(3) by ordering an accounting and by directing LINA to disgorge the profit and pay it directly to Rochow. See Great-West Life & Annuity Ins. Co., 534 U.S. at 214 n. 2, 122 S.Ct. 708 (recognizing “an accounting for profits, a form of equitable restitution”). “The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me.” Nickel v. Bank of Am. Nat’l Trust & Sav. Ass’n, 290 F.3d 1134, 1138 (9th Cir.2002).
V. THE DISGORGEMENT AWARD MUST BE RECALCULATED
I would return the case to the district court, however, for a recalculation of the award to Rochow. The figure awarded by the district court seems to derive from the total shown on Rochow’s corrected Exhibit A filed on May 25, 2012, plus daily interest the court added until July 24, 2012, when the court filed its Order Requiring Disgorgement. R.121-2 Page ID 3712.
LINA objected below to the corrected Exhibit A, pointing out several significant errors in it. The most conspicuous problem is that full profits are calculated through March 2012, R. 1212 Page ID 3725 (and by the court through July 2012), even though Exhibit A confirms that LINA made all required payments to Rochow or his estate by September 2009, with the exception of $2,065.52. R. 121-2 Page ID 3722. The additional errors LINA identified in its June 2012 filing with the district court, R. 122, may warrant further reductions in the amount of profits ordered disgorged by the district court. I would therefore reverse the award as calculated and remand the case to the district court for reconsideration.
VI. CONCLUSION
We do not create new, double remedies out of whole cloth if we affirm the district *395 court’s decision to require LINA to disgorge the profit it earned by breaching its fiduciary duties to Rochow. Nor will the sky fall if we affirm this remedy, as the Supreme Court aptly pointed out in response to the concerns of amici in Varity Corp., 516 U.S. at 513-14, 116 S.Ct. 1065. By recognizing that some few cases may include claims and remedies for injuries incurred under both § 1132(a)(1)(B) and § 1132(a)(3), we simply join the mainstream view of our sister circuits acknowledging the trust law principles that under-gird ERISA’s equity jurisprudence.
In this case, the disgorgement remedy is appropriate based on the evidence and the district court’s findings concerning LINA’s malfeasance, the length of the delay in paying benefits due, and the extraordinary profit LINA reaped from its malfeasance. Practical considerations abound. Allowing LINA to retain its profit creates an incentive for claims administrators to delay paying much-needed benefits to participants and beneficiaries while investing that money for their own gain. LINA’s conduct undercompensates the participant or beneficiary by forcing him to absorb expenses incurred as a result of the delay in the payment of benefits while LINA gains from delaying the claims process as long as possible. Permitting LINA to keep its profit also encourages fiduciaries to commingle plan assets with company funds.
The courts will not often come across a case as troubling as this one. I recognize, as will district courts, that disgorgement of profit should be used sparingly and only when equity requires it. In the ordinary benefits case — where there is a wrongful denial of benefits but no breach of fiduciary duties like the ones here — an award of prejudgment interest might be sufficient to compensate the beneficiary for the lost time value of money. See, e.g., Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan, 711 F.3d 675, 679, 686 (6th Cir.2013); Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616 (6th Cir.1998). But where an arbitrary and capricious denial of benefits is coupled with a breach of fiduciary duty, as it is here, ERISA provides a make-whole remedy that includes appropriate equitable relief under § 1132(a)(3).
Because the majority holds that ERISA bars the make-whole remedy awarded to Rochow, I respectfully dissent.